UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

)
DISTRICT NO. 1, PACIFIC COAST )
DISTRICT, MARINE ENGINEERS' )
BENEFICIAL ASSOCIATION )
AFL-CIO, )
 )
       Plaintiff, )
 )
v. ) Civil Action No. 17-1641 (ABJ)
 )
LIBERTY MARITIME CORPORATION, )
 )
       Defendant. )
)

## MEMORANDUM OPINION

This case involves a dispute between a labor union and a shipping company. On August 14, 2017, plaintiff District No. 1, Pacific Coast District, Marine Engineers' Beneficial Association AFL-CIO ("MEBA" or "the union") brought this action against defendant Liberty Maritime Corporation ("Liberty") pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Compl. [Dkt. # 1] ¶¶ 1, 34. MEBA alleges that Liberty refused to arbitrate a dispute as required by the terms of their collective bargaining agreement ("Agreement"), and it seeks an order compelling arbitration. Compl. ¶¶ 9, 35–37. Liberty answered the complaint, *see* Ans. [Dkt. # 5]; Am. Ans. [Dkt. # 7], and plaintiff has moved for judgment on the pleadings. Pl.'s Mot. for J. on the Pleadings [Dkt. # 8] ("Pl.'s Mot."); Pl.'s Mem in Supp. of Pl.'s Mot. [Dkt. # 8-1] ("Pl.'s Mem.").

The union contends that it is entitled to an order compelling arbitration as a matter of law based on the terms of the Agreement. Pl.'s Mem. at 1–2. Liberty has opposed the motion, arguing that arbitration is premature because the union failed to negotiate in good faith prior to invoking

the arbitration clause. Def.'s Opp. to Pl.'s Mot. [Dkt. # 9] ("Def.'s Opp.") at 1, 7–18. But the union maintains that the determination of whether the parties have engaged in good faith negotiations is itself a question that must be decided by an arbitrator, and not by the Court, under the terms of the Agreement. Pl.'s Mem. at 15. It also seeks attorneys' fees to cover the cost of bringing this case and preparing the instant motion. *Id.*

Because the Court agrees that the predicate question of whether the parties complied with the good faith negotiation requirement in the wage reopener provision of the Agreement must be resolved by an arbitrator, it will grant plaintiff's motion for judgment on the pleadings, enter judgment in favor of MEBA, and enjoin Liberty from refusing to participate in the arbitration of the parties' wage dispute on the grounds that the union failed to engage in good faith negotiations before invoking the arbitration clause. But the union's request for attorneys' fees will be denied.

## BACKGROUND

Plaintiff MEBA is a labor union that represents employees in the U.S. maritime industry who are located at ports throughout the United States and on oceangoing vessels. Compl. ¶ 2. Liberty is a shipping company that operates various seagoing vessels, and many of its employees are represented by MEBA. *Id.* ¶ 3.

On January 23, 2012, MEBA and Liberty signed a Memorandum of Understanding ("MOU" or "Agreement"), a collective bargaining agreement that is in effect until at least June 15, 2019. Compl. ¶¶ 8–9; Ex. A to Compl. [Dkt. # 1-1] ("MOU") at 1. The Agreement contains a "wage reopener provision," which states that "[e]ither party may reopen this Agreement, effective as of October 1, 2015, by giving the other party written notice at least 60 days and no more than 90 days prior to the reopener date." MOU § 3(f); Compl. ¶ 10. According to the MOU, "[i]n the event the Agreement is reopened, the parties agree to negotiate over the wages, benefits, and other

economic terms and conditions for subsequent years of the extended Agreement." MOU § 3(f); Compl. ¶ 11. The Agreement goes on:

> If, after engaging in good faith negotiations . . . the parties are unable to reach an agreement regarding changes in wages, benefits or other economic terms and conditions, the parties agree to submit on an expedited basis their dispute to a mutually selected arbitrator in accordance with the provisions set forth in the [collective bargaining agreement]. The arbitrator's decision will be final and binding on the parties.

MOU § 3(g); Compl. ¶ 12.

By letter on January 24, 2017, MEBA notified Liberty of its intent to reopen the Agreement for negotiations pursuant to the wage reopener provision, and it proposed several available dates for conducting the negotiations. Compl. ¶ 13; Ex. B to Compl. [Dkt. # 1-2]; *see* Am. Ans. ¶ 13; Def.'s Opp. at 3. One week later, MEBA provided Liberty with its first bargaining proposal. Compl. ¶ 14; Am. Ans. ¶ 14. The pleadings contain considerable detail about what happened next.

The parties exchanged emails concerning the proposal over the course of the next month. Compl. ¶¶ 15–16; Am. Ans. ¶¶ 15–16. While the union claims that Liberty did not provide a counterproposal during this time, and that it did not suggest any dates for the start of the negotiations, *see* Compl. ¶¶ 15–17, Liberty asserts that it responded to MEBA's proposal by requesting information, and that MEBA refused to provide it with the information it needed in order to bargain. Am. Ans. ¶¶ 15–17; *see also* Def.'s Opp. at 3.

On March 10, 2017, MEBA sent Liberty a letter asserting that it had attempted to negotiate in good faith, but because Liberty had not yet engaged in negotiations, the union intended to invoke section 3(g) of the MOU and begin arbitration proceedings. Compl. ¶¶ 18–19; Ex. C to Compl. [Dkt. # 1-3]; *see* Am. Ans. ¶¶ 18–19. MEBA attached another bargaining proposal to the letter, which it characterized as the union's "last, best and final offer" that it would present to the arbitrator. Compl. ¶¶ 18–19; Ex. C to Compl. [Dkt. # 1-3]; *see* Am. Ans. ¶¶ 18–19.

3

MEBA's counsel then contacted Liberty and invited its assistance in selecting an arbitrator. Compl. ¶ 20; Am. Ans. ¶ 20. Liberty rejected the arbitration demand and subsequently transmitted its first counter-proposal and offered to meet with MEBA and negotiate. Compl. ¶ 21; Am. Ans. ¶ 21.

MEBA then offered a third proposal, and the parties met on April 18, 2017 to begin negotiations. Compl. ¶ 22; Am. Ans. ¶ 22. At the end of the meeting, Liberty responded with its second counter-proposal. Compl. ¶ 22; Am. Ans. ¶ 22. In response, MEBA gave Liberty the fourth and fifth versions of its proposal. Compl. ¶ 23; Am. Ans. ¶ 23.

On June 13, 2017,[1] the parties met for a second negotiation session to discuss the new terms. Compl. ¶ 24; Am. Ans. ¶ 24. During the meeting, Liberty gave MEBA its third counter-proposal, and the parties set a future meeting date for July 18, 2017. Compl. ¶¶ 23, 27; Am. Ans. ¶¶ 23, 27. Prior to the July meeting, MEBA responded to Liberty's third counter-proposal with a sixth proposal for Liberty's review. Compl. ¶ 27; Am. Ans. ¶ 27.

On July 12, 2017, Liberty notified MEBA that it would not participate in the upcoming meeting because it did not want to engage in wage negotiations until a pending grievance issue involving both parties had been resolved. Compl. ¶ 28; Am. Ans. ¶ 28. MEBA immediately objected, and it insisted that Liberty's decision to suspend negotiations "amount[ed] to a failure to bargain in good faith." Compl. ¶ 29; Ex. D to Compl. [Dkt. # 1-4]; *see* Am. Ans. ¶ 29. MEBA then again invoked section 3(g) of the Agreement and sought to bring the wage reopener dispute before an arbitrator. Compl. ¶ 30; Ex. D to Compl. [Dkt. # 1-4].

---

2    One letter erroneously describes this meeting as taking place on June 18 rather than June 13. *See* Ex. E to Compl. [Dkt # 1-5] at 2; Def.'s Opp. at 4 n.3.

On July 17, 2017, Liberty rejected MEBA's demand for arbitration. Compl. ¶ 31; Ex. E to Compl. [Dkt. # 1-5]; Am. Ans. ¶ 31. Liberty stated in a letter that the demand for arbitration was premature, and it explained that the grievance had to be decided first because resolution of the contract interpretation issue at stake could "have a major economic impact which will affect [the] wage re-opener discussions." Ex. E to Compl. [Dkt. # 1-5] at 2.

At that point, the union went to court. On August 14, 2017, it filed a complaint seeking to compel arbitration of the wage reopener issues. Compl. And on November 6, 2017, while the case was pending, the parties settled the grievance that Liberty had cited as the reason for putting negotiations on hold in July. Decl. of Counsel William G. Miossi in Supp. of Def.'s Opp. [Dkt. # 9-1] ("Miossi Decl."); Ex. A to Miossi Decl.; Def.'s Opp. at 6.

On November 8, 2017, then, Liberty notified MEBA that it was prepared to restart the wage reopener negotiations. Ex. A to Miossi Decl. [Dkt. # 9-1]. But MEBA refused to continue negotiations, *see* Ex. B to Miossi Decl. [Dkt. # 9-1]; Ex. C to Miossi Decl. [Dkt. # 9-1]; Ex. D to Miossi Decl. [Dkt. # 9-1], explaining that "[t]he fact that [Liberty] is now willing to bargain does nothing to absolve its conduct that has placed the parties in this situation." Pl.'s Reply in Supp. of Pl.'s Mot. [Dkt. # 11] ("Pl.'s Reply") at 4.[2] With the parties in that posture, the union put the question to the Court to decide.

---

2   On November 30, 2017, the Court issued an order compelling MEBA to show cause why the action should not be dismissed as moot since the separate grievance had been resolved and Liberty had proposed dates for renewed negotiations. Order [Dkt. # 10]. Plaintiff responded that the case is not moot because defendant's actions prior to the abrupt end of negotiations showed a "pattern and practice of conduct" aimed at delaying negotiation proceedings. Pl.'s Reply at 2–3. Thus, the question of whether either party has engaged in good faith negotiations remains a live dispute.

5

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(c) authorizes a party to move for judgment on the pleadings at any time "after the pleadings are closed." Fed. R. Civ. P. 12(c).[3] Parties are entitled to pretrial judgment on the pleadings "if the moving party demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law." *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1370 (D.C. Cir. 2008), quoting *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483,1485 (D.C. Cir. 1992). When analyzing a motion for judgment on the pleadings, the Court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Peters*, 966 F.2d at 1485, quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988); *see Thompson v. District of Columbia*, 428 F.3d 283, 284 (D.C. Cir. 2005) (viewing the complaint's allegations in the light most favorable to the plaintiff when the defendants filed a 12(c) motion); *see also Hall v. District of Columbia*, 867 F.3d 138, 152 (D.C. Cir. 2017) ("A Rule 12(c) motion considers the defendant answer together with the complaint.").

While there are opinions in this district that state that the standards of review for a Rule 12(b)(6) motion and a Rule 12(c) motion are "essentially the same" or "virtually identical," *see, e.g.*, *Nat'l Shopmen Pension Fund v. Disa*, 583 F. Supp. 2d 95, 99 (D.D.C. 2008), citing *Plain v. AT & T Corp.*, 424 F. Supp. 2d 11, 20 n.11 (D.D.C. 2006); *Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 58 (D.D.C. 2007); *Jung v. Ass'n of Am. Med. Colls.*, 339 F. Supp. 2d 26, 35–36

---

3     Pleadings are closed for Rule 12(c) purposes when a complaint and an answer have been filed. *See* Fed. R. Civ. P. 7(a); *Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 60 (D.D.C. 2007) ("Pleadings are closed within the meaning of Rule 12(c) if no counter or cross claims are at issue when a complaint and an answer have been filed.").

(D.D.C. 2004), the standard set out in the *Schuler* case by the D.C. Circuit more closely resembles a summary judgment type of determination.

Wright's Federal Practice and Procedure makes the same observation, noting that a Rule 12(c) motion asks a court to address the merits of the parties' claims and defenses and not simply procedural barriers or pleading deficiencies. 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1369 (3d ed. 2017) (commenting that the appropriate standard of review for a Rule 12(c) motion is more similar to a Rule 56 motion for summary judgment, except that the Court may only consider the contents of the pleadings); *see also Jones v. Dufek,* 830 F.3d 523, 528 (D.C. Cir. 2016) ("The district court properly resolved these questions as a matter of law on a motion under Rule 12(c)."), citing *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993) ("[T]he standard courts apply for summary judgment and for judgment on the pleadings 'appears to be identical.'").[4]

If on a Rule 12(b)(6) or 12(c) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993) (applying the same test when converting a Rule 12(b)(6) motion to one for

---

4     *See also Landmark Am. Ins. Co. v. VO Remarketing Corp.*, 619 F. App'x 705, 708 (10th Cir. 2015) ("Granting a motion for judgment on the pleadings requires the movant to establish an absence of any issue of material fact and entitlement to judgment as a matter of law."); *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008) ("A grant of judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.") (internal quotation marks omitted); *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008) ("[Rule 12(c)] [j]udgment will only be granted where the moving party clearly establishes there are no material issues of fact, and that he or she is entitled to judgment as a matter of law."); *Nat'l Fid. Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987) ("A motion for judgment on the pleadings may be granted only if the moving party clearly establishes that no material issue of fact remains to be resolved and that he or she is entitled to judgment as a matter of law.") (internal citation omitted).

summary judgment). While Liberty attaches correspondence relating to the resumption of negotiations to its pleading, *see* Decl. & Exs. to Def.'s Opp. [Dkt. # 9-1], the Court does not need to consider them to resolve the legal issue presented in the pending motion. Therefore, the Court finds it appropriate to consider this case under the standard of review for judgment on the pleadings, and it will not convert the motion to one for summary judgment.

## ANALYSIS

### I. The union is entitled to judgment on the pleadings.

MEBA seeks to compel arbitration of the parties' failure to come to terms under the wage reopener provision of the collective bargaining agreement. *See* Compl.; Pl.'s Mem. at 2. Liberty does not deny that the parties agreed in the MOU to arbitrate disputes arising under that provision. *See* Am. Answer ¶¶ 11–12. But it highlights the language in the MOU that requires the parties to negotiate first, *see* Def.'s Opp. at 1 ("According to its express terms, the arbitration agreement in this case is available only to resolve differences concerning wage rates and benefit contributions the parties cannot settle themselves after first engaging in good faith bargaining."), and it maintains that MEBA's invocation of the arbitration provision is premature because the union did not negotiate in good faith before demanding arbitration. *Id.* at 7.

Each party has advanced its own characterization of the series of events set forth above. They plainly disagree about whether the good faith negotiation requirement has been satisfied, but more important, they disagree about who should decide that question. *See* Compl. ¶¶ 13–31; Pl.'s Mem. at 13, 15; Def.'s Opp. at 8–19; Pl.'s Reply at 3–4, 8. MEBA contends that pursuant to the MOU, and in the absence of any evidence of the parties' intent to submit the matter to a court, the threshold question must be referred to an arbitrator, *see* Pl.'s Mem. at 13–15; Pl.'s Reply at 7–8, while the employer is equally adamant that the Court must decide it. Def.'s Opp. at 8–18; *see also*

*id.* at 3 ("The arbitration provision contained in Section 3(g) applies only to the parties' reopener negotiations and no other type of dispute."). Since the Court will resolve the arbitration question in favor of the union, it will not address the adequacy of the negotiations, and nothing in this opinion should be read as expressing any view on the matter.

While there is a strong "federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983), "arbitration is a matter of contract[,] and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). "If the contract is silent on the matter of who primarily is to decide 'threshold' questions about arbitration, courts determine the parties' intent with the help of presumptions." *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014) (using general contract interpretation principles to interpret the arbitration provision of an international treaty, and concluding that the arbitrator, not the court, must determine if a procedural condition precedent to arbitration had been satisfied).

Courts presume that the parties intend courts, not arbitrators, to decide questions of "arbitrability." *BG Grp.*, 572 U.S. at 34. These includes questions such as "whether the parties are bound by a given arbitration clause," or "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *see, e.g.*, *Granite Rock v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–300 (2010) (concluding that disputes over "formation of the parties' arbitration agreement" and "its enforceability or applicability to the dispute" at issue are "matters . . . the court must resolve"); *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 651 (1986) (holding that it was for the court to decide whether a labor-management lay-off controversy fell within the arbitration clause of a collective bargaining agreement); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546–51

(1964) (concluding that a court must determine whether an arbitration agreement survived a corporate merger and bound the resulting corporation since "[u]nder our decisions, whether or not [t]he company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties"), quoting *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241 (1962).

But, "courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration." *BG Grp.*, 572 U.S. at 34; *see, e.g.*, *Howsam*, 537 U.S. at 84, 86 (observing that "'procedural questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator," and that parties "normally expect a forum-based decisionmaker to decide forum-specific procedural gateway matters") (emphasis in original); *John Wiley*, 376 U.S. at 557 (concluding that an arbitrator must determine whether the first two steps of a grievance procedure were followed when those steps were prerequisites to beginning arbitration); *Exxon Chem. Co. v. NLRB*, 386 F.3d 1160, 1166 (D.C. Cir. 2004) ("Exxon's objections that the three grievances were untimely under the contract . . . are properly for the arbitrator to resolve."); *Wash.-Baltimore Newspaper Guild, Local 35 v. Wash. Post*, 959 F.2d 288, 291 (D.C. Cir. 1992) (confirming the general rule that "'procedural' arbitrability questions are for arbitrators and not courts to decide"); *Wash. Hosp. Ctr. v. Serv. Emp. Int'l Union Local 722*, 746 F.2d 1503, 1507–09 (D.C. Cir. 1984) (finding that an arbitrator should decide the effects of a party's admitted failure to follow the contractual grievance process, which was a prerequisite to arbitration).

The Supreme Court has said that these procedural "gateway" matters include claims of "waiver, delay, or a like defense to arbitrability." *BG Grp.*, 572 U.S. at 35, quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25. They also include the "satisfaction of 'prerequisites such as time

limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate.'" *Id.*, quoting *Howsam*, 537 U.S. at 85.[5]

In *BG Group, PLC v. Republic of Argentina*, the Supreme Court had to determine "who – court or arbitrator – bears primary responsibility for interpreting and applying [the] local court litigation provision" contained in a treaty's arbitration clause. 572 U.S. at 33. The international agreement provided for arbitration if a period of eighteen months had elapsed after the dispute had been submitted to a local tribunal and that tribunal "ha[d] not given its final decision." *Id.* at 28, 35. The Court first observed that questions related to procedural preconditions to arbitration are for arbitrators, not courts, to decide. *Id.* at 35. It then concluded that the assessment of whether the party seeking to compel arbitration had complied with the local litigation requirement was a question of the "procedural[] variety" because "[i]t determines *when* the contractual duty to arbitrate arises, not *whether* there is a contractual duty to arbitrate at all." *Id.* (emphasis in original). Furthermore, the Court observed that the treaty contained no evidence that the parties had any "intent contrary to our ordinary presumptions about who should decide threshold issues related to arbitration": the treaty did not specify that the litigation requirement "is

---

5 The Supreme Court has also noted that the Revised Uniform Arbitration Act of 2000 supports this position.

> Indeed, the Revised Uniform Arbitration Act of 2000 (RUAA), seeking to "incorporate the holdings of the vast majority of state courts and the law that has developed under the [Federal Arbitration Act]," states that an "arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled." And the comments add that "in the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for the court to decide and issues of procedural arbitrability, *i.e.*, whether prerequisites such as *time limits*, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide."

*Howsam*, 537 U.S. at 84–85 (alterations in original) (emphasis in original), quoting RUAA § 6(c) & cmt. 2, 7 U.L.A. 12–13 (Supp. 2002).

11

to operate as a substantive condition on the formation of the arbitration contract, or that it is a matter of such elevated importance that it is to be decided by courts." *Id.* at 40.

In making its decision, the Court also observed that the local litigation requirement was highly analogous to procedural provisions that other courts have found to be for arbitrators, not courts, to interpret. *BG Grp.*, 572 U.S. at 36. Particularly relevant here, the Court cited approvingly to the First Circuit's decision in *Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, in which that court concluded that a "good faith negotiations" clause was a procedural prerequisite to arbitration and thus a matter for the arbitrator and not the court. *Id.*, citing *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 383 (1st Cir. 2011).

In *Dialysis Access Center*, the parties entered into a management services agreement which stated in part, "[the parties] shall use good faith negotiation to resolve any dispute that may arise under this Agreement . . . . In the event [the parties] cannot reach agreement on any issue, such issue will be settled by binding arbitration." 638 F.3d at 371. A number of disputes arose between the parties regarding their obligations under the agreement, so the defendant submitted the disputes to arbitration. *Id.* In response, the plaintiffs filed suit. *Id.* The plaintiffs asserted that the parties' disputes over their agreement could not be submitted to arbitration because the defendant had not complied with the condition that the parties engage in good faith negotiations prior to arbitration. *Id.* at 383. The parties also disagreed about whether the arbitration clause "in fact establishe[d] a condition precedent to arbitration," but the court concluded that it did not need "to resolve this disagreement because, assuming arguendo that the [a]rbitration [c]lause establishes such a pre-condition to arbitration, [plaintiffs] have not rebutted the presumption that the arbitrator should decide whether the parties complied with such a procedural pre-requisite to arbitration." *Id.*

While the D.C. Circuit has not directly considered who should decide whether the parties have complied with a good faith negotiation provision that is a condition precedent to arbitration, other courts appear to be in agreement that it is a question for the arbitrator. *See, e.g.*, *Dialysis Access Ctr.*, 638 F.3d at 383 ("[W]e find that the parties' disagreement over whether RMS complied with the . . . alleged good faith negotiations pre-requisite to arbitration is an issue for the arbitrator to resolve . . . ."); *Cutler Assocs., Inc. v. Palace Constr., LLC*, 132 F. Supp. 3d 191, 196, 198 (D. Mass. 2015) (concluding that the "decision as to the effect of [p]laintiff's alleged failure to comply with the preconditions of arbitration," including the requirement to engage in "uninterrupted good faith discussions for at least two hours," "is one for the arbitrator," especially because the defendants "have made no argument as to why [the] presumption is or should be overcome"); *Dixon v. Wilora Lake Healthcare LLC*, No. 3:17-00713, 2018 WL 792065, at *3 (W.D.N.C. Feb. 8, 2018) ("The Court . . . determines [d]efendants' alleged failure to try in good faith to resolve the dispute is a procedural question that rightly should be decided by an arbitrator."); *Mike Rose's Auto Body, Inc. v. Applied Underwriters Captive Risk Assurance Co.*, No. 16-1864, 2016 WL 5407898, at *10 (N.D. Cal. Sept. 28, 2016) (concluding that whether the requirement to negotiate in good faith was a condition precedent to arbitration was a question for the arbitrator to decide, and that whether such a condition precedent was satisfied was also for the arbitrator to decide); *Enter. Info. Mgmt, Inc. v. SuperLetter.com, Inc.*, No. 13-2131, 2013 WL 5964563, at * 8–9 (D. Md. Nov. 7, 2013) (finding that the clause requiring "negotiation" prior to a referral to arbitration was a procedural precondition to arbitration that must be interpreted by the arbitrator, not the court); *U.S. ex rel. Alamo Envtl., Inc., v. Cape Envtl. Mgmt., Inc.*, No. 11-482, 2012 WL 6726571 at *7–8 (W.D. Okla. Dec. 27, 2012) (holding that an arbitrator must decide whether the defendant had "satisfied or waived any procedural preconditions to arbitration,"

13

including the requirement that the parties seek to resolve their disputes through "good faith negotiation" before engaging in arbitration or litigation).[6]

---

6   Liberty does not address this authority in its opposition. It points to one case involving a good faith negotiation provision, *see* Def.'s Opp. at 13–14, citing *Local 743 Int'l Bhd. of Teamsters v. Rush Univ. Med. Ctr.*, No. 15-2457, 2016 WL 7491812, at *2 (N.D. Il. Dec. 30, 2016), but it is not binding on this Court, and it is distinguishable. In *Local 743 International Brotherhood of Teamsters v. Rush University Medical Center*, the collective bargaining agreement at issue provided that if any matters remained unresolved "after a reasonable period of good faith collective bargaining and an impasse has been reached," those matters must be "submitted by either party to an impartial arbitrator." 2016 WL 7491812, at *2. At one point, the defendant refused to bargain, and the plaintiff filed suit to compel arbitration. *Id.*
   The court first addressed the preliminary question of whether it had subject matter jurisdiction over the case under Section 301 of the Labor Management Relations Act, which grants jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." *Id.* at *3 (alteration in original), quoting 29 U.S.C. § 185(a). The parties disputed whether they had even formed a valid contract, *id.*, but the court concluded that even if they had, the second amended complaint failed "to allege a contract violation that require[d] arbitration." *Id.* It observed that "any negotiations dispute under the contract would need to reach impasse before the parties must submit their dispute to arbitration." *Id.* Because the union's own second amended complaint alleged that the employer was still willing to negotiate, the court determined that impasse had not been reached and the parties were not yet required to arbitrate. *Id.* at *4.
   Liberty argues that this Court should follow a similar approach and make its own assessment of whether the case is ripe for arbitration. But in the *Rush* case, the court's factual analysis flowed from its legal determination that the particular agreement in question contained an express provision excluding certain grievances from arbitration. *See id.* at *3–4. Not only did the agreement require negotiation and reaching an impasse before labor issues could be arbitrated, but it also provided that "disputes concerning the interpretation, application or violation" of the agreement itself were subject to the obligation to go through that process prior to arbitration. *Id.* at *4. Thus, the court found that "[t]he fact that the Agreement explicitly excludes from arbitration those matters that have not reached an impasse overcomes the presumption of arbitration where such a clause is otherwise ambiguous." *Id.*
   Here, Liberty has not pointed to an express provision that overcomes the presumption of arbitration. Moreover, the *Rush* court did not explicitly evaluate whether the negotiation and impasse provision was a procedural condition precedent or a substantive provision. By contrast, a court in this district has observed that arbitration provisions requiring reaching a "deadlock" prior to arbitration raise procedural questions for an arbitrator to decide. *M.R.S. Enters., Inc. v. Sheet Metal Workers' Int'l Ass'n, Local 40*, 429 F. Supp. 2d 72, 80 (D.D.C. 2006) (concluding that it would "defer to the arbitration board's decision regarding whether a deadlock was reached" because "procedural questions . . . are presumptively not for the judge, but for the arbitrator[] to decide") (emphasis omitted), quoting *Howsam*, 537 U.S. at 84.

In an effort to avoid the application of these principles, defendant attempts to characterize the good faith negotiation requirement in the MOU as a substantive limit on topics subject to arbitration, instead of a procedural precondition to arbitration. *See* Def.'s Opp. at 15. According to Liberty, the good faith negotiation provision establishes the "scope" of the parties' agreement to arbitrate: that is, the arbitration clause is limited to those reopener disputes that have been first narrowed through the parties' good faith bargaining efforts. *Id.* at 11. Thus, according to Liberty, the presumption that a court must decide any questions related to the scope of an arbitration provision applies in this case. *Id.* at 9–13.

But defendant cannot transform this issue into a question concerning arbitrability simply by calling it one in a legal pleading. There is no dispute that the parties have agreed to arbitrate wage reopener issues. And defendant has already admitted that the good faith negotiation requirement is merely a "precondition" to arbitrating those issues. *See, e.g.*, Def.'s Opp. at 15 ("[T]he good faith bargaining requirement is the *essential precondition* to the parties' agreement to arbitrate anything related to the reopener negotiations.") (emphasis added); *id.* at 7 ("[T]he Union has not satisfied the condition precedent to having an arbitrator decide the wages and benefits Liberty Maritime will pay its employees."); *id.* at 15 ("Here, the terms of the MOU arbitration provision require the Union to have first engaged in good faith bargaining as the condition precedent to interest arbitration . . . ."). Also, Liberty's own characterization of the contractual clause at issue shows that it falls well within the Supreme Court's definition of a procedural precondition.

As noted above, in *BG Grp. PLC*, the Supreme Court explained that a procedural condition precedent to arbitration "determines *when* the contractual duty to arbitrate arises, not *whether* there is a contractual duty to arbitrate at all." *BG Grp.*, 572 U.S. at 35 (emphasis in original). The Court

15

also noted that since the treaty provided that only an arbitral determination – and not any local court decision – would be final and binding on the parties, the requirement to await a local court ruling was a "purely procedural requirement – a claims processing rule that governs when the arbitration may begin, but not whether it may occur or what its substantive outcome will be on the issues in dispute." *Id.* at 35–36. Similarly, here, defendant states in its opposition that in crafting the arbitration provision, "the Union and Liberty Maritime exercised 'their power to specify' the *time* at which 'their obligation to arbitrate' would arise, as well as the 'clear condition' that triggers the obligation – namely, following bargaining in good faith." Def.'s Opp. at 12 (emphasis added); *see id.* at 15 ("The parties crafted the MOU arbitration provision to restrict arbitration to only the circumstances where both parties *first* have bargained in good faith . . . .") (emphasis added). And the arbitration provision provides that "[t]he arbitrator's decision will be final and binding on the parties," MOU § 3(g), which is a further indication of the procedural nature of the good faith negotiation requirement.[7]

---

[7] The parties appear to dispute whether the good faith negotiation provision even qualifies as a condition precedent to arbitration. *See* Pl.'s Mem. at 15 ("Contrary to Liberty's suggestion, good faith bargaining is not a precondition to proceeding to interest arbitration. Rather, it is merely [a] term of the parties' labor contract that is subject to interpretation by an arbitrator."); Def.'s Opp. at 7 ("[T]he Union has not satisfied the condition precedent to having an arbitrator decide the wages and benefits Liberty Maritime will pay its employees."); *id.* at 15 ("Here, the terms of the MOU arbitration provision require the Union to have first engaged in good faith bargaining as the condition precedent to interest arbitration . . . ."). This is also a question reserved for the arbitrator. *See Dialysis Access Ctr.*, 638 F.3d at 383 (assuming arguendo that the arbitration clause established a condition precedent to arbitration, even though it was disputed between the parties, and holding that the arbitrator must decide whether the parties complied with such a procedural pre-requisite to arbitration); *Mike Rose's Auto Body, Inc.*, 2016 WL 5407898, at *10 (concluding that whether the good faith negotiation provision was a "condition precedent" was "a matter of contract interpretation for the arbitrator to decide" in addition to "whether a condition precedent was in fact satisfied").

Ultimately, defendant does not point to any evidence to indicate that the parties intended to have a court, and not an arbitrator, determine whether the good faith negotiation requirement has been satisfied. And there is no language in the Agreement "that might overcome the ordinary assumption," or that "demonstrates a contrary intent as to the delegation of decisional authority between judges and arbitrators." *BG Grp.*, 572 U.S. at 36. Therefore, defendant has failed to rebut the applicable presumption, and this issue must be submitted to an arbitrator.[8]

---

8  The fact that the procedural and substantive issues involved in the parties' dispute are intertwined supplies another reason why they are best taken up together by an arbitrator. *See John Wiley*, 376 U.S. at 557–59. In *John Wiley*, the Court first concluded that the arbitration provision in the collective bargaining agreement survived the Wiley-Interscience merger so as to be operative against Wiley. *Id.* at 546. Then, the Court had to determine whether the Court or an arbitrator must decide whether the procedural prerequisites to arbitration had been met. *Id.* at 544, 555–58. The collective bargaining agreement provided for arbitration after a three-step grievance procedure: the first two steps involved conferences between the employee, the union, the employer, and other personnel of those entities, and the third step called for arbitration "in the event that the grievance shall not have been resolved or settled" after the second step. *Id.* at 555–56. The plaintiff argued that since the first two steps had not been followed, no duty to arbitrate had arisen. *Id.*

The Court held that this question was best left for the arbitrator in order to avoid duplicative efforts by courts and arbitrators. *Id.* at 558. It observed that "whether such procedures have been followed or excused, or whether the excused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration." *Id.* at 557. The Court emphasized that "[i]t would be a curious rule which required that intertwined issues of 'substance' and 'procedure' growing out of a single dispute and raising the same questions on the same facts had to be carved up between two different forums, one deciding after the other." *Id.*

Liberty attempts to distinguish this case from the *John Wiley* decision on the grounds that the policy considerations underlying the case are not implicated here. It argues that the parties did not agree to arbitrate the issue of whether the parties have complied with the good faith negotiation requirement, and that there is no need for an arbitrator to deal with this question because "there is no overlap between the predicate good faith bargaining obligation and the ultimate merits of the parties' dispute." Def.'s Opp. at 8–9, 11–12, 15–16. However, a decision concerning whether the parties did indeed bargain in good faith may rest in part on evaluating the substance of the parties' various proposals to one another, and this analysis bears on the merits of the dispute over the appropriate wage and economic benefits to be negotiated under the collective bargaining agreement. Thus, the reasoning underlying the *John Wiley* decision is equally applicable here.

17

## II. Plaintiff's request for attorney's fees will be denied.

In one sentence at the end of its memorandum, the union makes a very summary request for attorneys' fees and costs because Liberty forced it to "resort to litigation in order to enforce the parties' clear contractual arbitration provision." Pl.'s Mem. at 15. However, MEBA does not point to any legal authority in support of its entitlement to a fee award. Therefore, the Court will deny the request.[9]

## CONCLUSION

For the foregoing reasons, the Court will grant plaintiff's motion for judgment on the pleadings and deny its request for attorneys' fees.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: September 14, 2018

---

9     The Agreement does not appear to contain a provision for the award of attorneys' fees, and the Labor Management Relations Act does not expressly authorize the award of attorneys' fees. *See Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S. Postal Serv.*, 590 F.2d 1171, 1175 (D.C. Cir. 1978); *Wash. Hosp. Ctr.*, 746 F.2d at 1509. A court may award attorneys' fees where a case "was in bad faith, vexatious, wanton or undertaken for oppressive reasons justifying the imposition of attorney's fees." *Wash. Hosp. Ctr.*, 746 F.2d at 1509, 1512 (awarding attorneys' fees to the union for the "vexatious" nature of the hospital's arguments in support of its refusal to arbitrate because the Supreme Court had "decided the exact issue," and the hospital made no attempt to distinguish its case from the facts of that case), citing *Nat'l Ass'n of Letter Carriers*, 590 F.2d at 1177. "'[V]exatious]' means that the losing party's actions were 'frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Id.*, quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). The fact that a party does not prevail before the district court does not necessarily establish that its conduct was "vexatious" or "wanton." *Nat'l Ass'n of Letter Carriers*, 590 F.2d at 1178. And here, as in *Nat'l Assn. of Letter Carriers*, MEBA has not come forward with evidence that would prompt the Court to exercise its discretion to invoke the equitable authority of the Court to award attorneys' fees.